IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DAVID SILVER,**

      **Plaintiff,**

**vs.**                                                    No. 1:12-cv-00948-JAP/RHS

**BRUNO VASSEL, III, GORDON
PETERSON,** and **CLINTON H. BULLOCK,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On October 23, 2012, Defendants, Bruno Vassel, III, Gordon Peterson, and Clinton

Bullock, filed an AMENDED MOTION TO DISMISS Plaintiff David Silver's AMENDED

COMPLAINT (Doc. No. 5) ("Amended Complaint") under Federal Rules of Civil Procedure

12(b)(2), 12(b)(3), and 12(b)(5). *See* AMENDED MOTION TO DISMISS (Doc. No. 15)

("Amended Motion to Dismiss").[1] Plaintiff Silver ("Silver"), who is proceeding pro se, contends

that the alleged improper service was a mere "clerical error," that venue is proper in this Court,

and that the Court has personal jurisdiction over Defendants because of Silver's disparagement

claim. *See* PLAINTIFF'S REPLY TO DEFENDANTS' MOTION TO DISMISS AND

---

[1]Previously, on October 3, 2012, Defendants filed a first MOTION TO DISMISS
UNDER RULE 12(b) FOR LACK OF JURISDICTION, IMPROPER VENUE, IMPROPER
SERVICE OF PROCESS, OR INSUFFICIENT SERVICE OF PROCESS (Doc. No. 8) ("First
Motion to Dismiss"). Since Defendants later filed the Amended Motion to Dismiss, the Court
assumes the First Motion to Dismiss has been superseded. The Court therefore will deny the
First Motion to Dismiss as moot.

Also, on October 9, 2012, one of Defendants' attorneys, Marion K. Mortensen, filed a
MOTION FOR LEAVE TO APPEAR, requesting leave to represent Defendants in this Court
while his application to practice in the District of New Mexico was pending. *See* Doc. No. 9
("Motion for Leave"). However, on October 12, 2012, Mr. Mortensen was admitted to practice
in the District of New Mexico. Therefore, the Motion for Leave will be denied as moot.

PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT (Doc. No. 14) ("Motion to Dismiss Response") at 1. Additionally, Silver moves for default judgment to be entered against Defendants because Defendants have not filed an answer to his Complaint. *See id.* at 4-5. Silver has also filed several "motions" that lack legal basis and that request the Court's involvement in Silver's extralegal business matters.[2] In response to two of these filings, which Defendants assert are frivolous, Defendants move for an award of attorney's fees and costs. *See* DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO ADD CLARITY TO THE PROCESS OF VALUING TECH COMPANIES, NOTICE OF INTENT TO SEEK RULE 11 SANCTIONS, AND REQUEST FOR AN AWARD OF ATTORNEY'S FEES AND COSTS (Doc. No. 33) ("Motion to Add Clarity Response") at 3; DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR THE COURT TO SEND THE PARTIES TO SHAREHOLDER FORUM, NOTICE OF INTENT TO SEEK RULE 11 SANCTIONS, AND REQUEST FOR AWARD OF ATTORNEY'S FEES AND COSTS (Doc. No. 36) ("Shareholder Forum Response") at 3.

The Court will dismiss three of the five counts in Silver's Amended Complaint *sua sponte* for lack of standing. As to the remaining counts in the Amended Complaint, the Court finds that it lacks personal jurisdiction over Defendants and that, even if the Court could

---

[2]On December 11, 2012, Silver filed a MOTION TO COMPEL DEFENDANTS TO TALK TO AMAZON ABOUT AN ACQUISITION OF IBOATS AND SHARE THE VALUE AND HOW ARRIVED AT OFFERED WITH AMAZON WITH PLAINTIFF (Doc. No. 22) ("Motion to Compel"), asking the Court to compel Defendants to enter business negotiations with Amazon.com. On January 29, 2013, Silver filed a MOTION FOR ORDER TO ADD CLARITY TO THE PROCESS OF VALUING TECH COMPANIES (Doc. No. 32) ("Motion for Order to Add Clarity"), asking the Court to "realize that it is no longer difficult or obtuse to arrive at a valuation of a privately-held tech company, and all investment banks . . . will see that the valuation of Defendants' company is significantly more than 2.2x the angels' 2001 and 2002 investments." Finally, on February 26, 2013, Silver filed a MOTION FOR ORDER FOR THE COURT TO SEND THE PARTIES TO SHAREHOLDER FORUM (Doc. No. 35) ("Motion for Court to Send Parties to Shareholder Forum"), asking the Court to order the parties to discuss a stock valuation issue with a non-party business, and to order that the parties abide by that business' determination of the stock's value.

properly exercise personal jurisdiction over Defendants, venue in the District of New Mexico would not be proper. Accordingly, the Amended Motion to Dismiss will be granted. The Court also will deny Silver's Motion for a Default Judgment and his other motions, all of which lack any legal basis even if the Court had jurisdiction over Defendants. Finally, the Court will grant Defendants' request for attorney's fees and costs and will permit Defendants to file a motion for reimbursement of the reasonable expenses incurred in responding to Silver's frivolous Motion for Order to Add Clarity and Motion for Court to Send Parties to Shareholder Forum.

## BACKGROUND

### A.    Silver's Allegations

The following allegations from Silver's Amended Complaint are assumed to be true for the purposes of Defendants' Amended Motion to Dismiss.

The Amended Complaint selectively details elements from over ten years of business dealings between Silver, who is a "a well-known and highly regarded angel capital investment banker" and the Founder/CEO of Santa Fe Capital Group (SFCG), and Defendants, who are the CEO/ Chairman (Vassel), CFO (Peterson), and outside counsel (Bullock) for iboats, inc., a Utah corporation. Amended Complaint at 2 ¶ 8. According to the Amended Complaint, in 2002-03, iboats hired Silver as its investment banker "in regard to the private placement of iboats' 7% Cumulative Convertible Preferred Stock and 12% Convertible Promissory Note with Detachable Warrants." *Id.* at ¶ 7. Vassel flew to Santa Fe at some point in the early 2000s, when "iboats was a very early social media company," to ask for Silver's help in raising "angel capital" for iboats. *Id.* at ¶ 8. Silver identified a group of six "angels" who collectively invested about $200,000 in iboats via 7% Cumulative Convertible Preferred Stock ("Preferred Stock") and a 12% Convertible Promissory Note with Detachable Warrants ("Convertible Note"). *See id.* at ¶¶ 11, 17. Silver "is the contractual recipient . . . of five (5%) percent of all the securities purchased by

the angel investors that he introduced to iboats, and whatever they are due and entitled to" in case of the securities' liquidation. *Id.* at ¶ 16. The Preferred Stock's redemption period was seven years; the Convertible Note's term was six months. *See id.* at ¶¶ 22-23.

In the years after the angel investors' purchase of its securities, iboats grew to become "a highly-regarded online retailer of boats and boating accessories with sales of an estimated $20 to $25 million per annum." *Id.* ¶ 9. However, iboats has not repaid the angels' investment in the Convertible Note; has paid no dividends or interest on the Preferred Stock or the Convertible Note; has violated numerous covenants in the Preferred Stock agreement; has defaulted on the terms of the Convertible Note; has not audited iboats' books and records each year as promised in the Preferred Stock agreement; and has not purchased a life insurance policy for Vassel as promised in the Preferred Stock agreement. *See id.* ¶¶ 23-26, 34-35. Defendants (or iboats) also "have not issued an annual report for 2011 or a half-year report on the prior six months' operating results. . . , although this had been their custom from 2003 through 2010." *Id.* ¶ 29. Instead, now Defendants are offering the angels a return on their investment of "all back interest or dividends annually, not cumulatively, and then [they would also] take a payment of the principal or face amount of the Preferred Stock or the Convertible Note with Warrants, and consider themselves fully paid; or, if not that, convert into iboats' common stock (where they would have no rights whatsoever)." *Id.* ¶ 30.

After the angels told Silver about Defendants' offer to the angels, Silver contacted Peterson on March 15, 2012 to tell Peterson that "iboats owes and must pay each and every Preferred Stockholder 1.78x the number of shares they purchased." *Id.* at ¶ 31. Silver later also wrote to Bullock "to correct [Bullock's] fraudulent thinking" by explaining the concept of cumulative interest. *Id.* at ¶ 32. Finally, on September 26, 2012, Peterson wrote to Silver and several of the angels "to invite them . . . to iboats' annual stockholders' meeting and to promise

4

that [Peterson] would be sending the results of the [Fiscal Year End] December 31, 2011

results." *Id.* at ¶ 40. In sending messages to some of the angels, Peterson mis-addressed three of

the emails, so that the emails did not properly reach those three angels. *See id.*

**B.      Silver's Efforts to Serve the Amended Complaint**

On September 10, 2012, Silver filed his original Complaint with this Court. *See* Doc. No.

1. Silver sent copies of the Complaint to Defendants via FedEx on the same day (September 10,

2012). *See* Motion to Dismiss Response at 1. The Complaint reached Defendants' offices in Utah

(iboats' office and its outside law firm's office) on September 11, 2012, where an employee at

each office (but not Defendants or Defendants' designated agent) signed to acknowledge receipt.

*See* AFFIDAVIT OF GORDON PETERSON IN SUPPORT OF DEFENDANTS' MOTION TO

DISMISS COMPLAINT (Doc. No. 17) ("First Peterson Aff.") at 2; AFFIDAVIT OF CLINTON

J. BULLOCK IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT (Doc.

No. 18) ("First Bullock Aff.") at 2. Silver did not obtain a summons to accompany the original

Complaint, so the September 10 FedEx mailings contained no summonses. *See id.*; *see also*

Docket (summons not issued until October 9, 2012); Motion to Dismiss Response at 1.

Subsequently, on October 2, 2012, Silver filed his Amended Complaint with this Court.

*See* Doc. No. 5. Silver attempted to effect service of the Amended Complaint upon Defendants

via email and facsimile on October 1, 2012 (before the Amended Complaint was even filed with

this Court). *See* SECOND AFFIDAVIT OF CLINTON J. BULLOCK IN SUPPORT OF

DEFENDANTS' AMENDED MOTION TO DISMISS COMPLAINT (Doc. No. 19) ("Second

Bullock Aff.") at 2; SECOND AFFIDAVIT OF GORDON PETERSON IN SUPPORT OF

DEFENDANTS' AMENDED MOTION TO DISMISS COMPLAINT (Doc. No. 20) ("Second

Peterson Aff.") at 2. Also, on October 3, 2012, Defendants received copies of the Amended

Complaint, sent via the United States Postal Service, at their places of employment. *See id.* On

October 9, 2012, the office of the Clerk of this Court issued summonses as to all Defendants. *See*

Docket. Finally, that same day (October 9, 2012), Silver sent copies of the summonses and

Amended Complaint to all Defendants via FedEx. *See* Motion to Dismiss Response at 1. The

summonses and Amended Complaint reached Defendants' places of employment on October 10,

2012, where once again an employee at each office, but not Defendants, and not Defendants'

designated agent for service, signed to acknowledge receipt of the FedEx delivery. *See* Second

Bullock Aff. at 2; Second Peterson Aff. at 2.

## DISCUSSION

Before addressing other considerations raised by Silver's Amended Complaint and the

Amended Motion to Dismiss, the Court pauses to note the implications of Silver's pro se status.

> We read *pro se* complaints more liberally than those composed by lawyers.
> However, as we often reiterate, the generous construction that we afford pro se
> pleadings has limits, and we must avoid becoming the plaintiff's advocate.
> Though we do not hold the pro se plaintiff to the standard of a trained lawyer, we
> nonetheless rely on the plaintiff's statement of his own cause of action. Thus, we
> may not rewrite a complaint to include claims that were never presented.

*Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012) (internal citations

and quotation marks omitted). Additionally, the Tenth Circuit "has repeatedly insisted that pro se

parties follow the same rules of procedure that govern other litigants." *Hall v. Witteman*, 584

F.3d 859, 863-64 (10th Cir. 2009) (quoting *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d

836, 840 (10th Cir. 2005)). Specifically, for instance, "[a] pro se litigant is still obligated to

follow the requirements of Fed. R. Civ. P. 4," which governs the rules of service of process.

*DiCesare v. Stuart*, 12 F.3d 973, 980 (10th Cir. 1993) (citing *Jones v. Frank*, 973 F.2d 872 (10th

Cir. 1992), which affirmed dismissal of a pro se litigant's action under Rule 4(j) due to lack of

proper service). The Court's reading of Silver's Amended Complaint is also influenced by the

reality that Silver is far from a first-time plaintiff in federal court: rather, he has represented

himself in numerous federal cases that he initiated.[3] Silver's experience with federal litigation means that this Court will not view his failures to comply with court rules through the same relatively lenient lens as it might have. *See, e.g., Debardeleben v. Pugh*, 85 F. App'x 142, 145-46 (10th Cir. 2004) (not published) (affirming pro se complaint's dismissal and noting that the plaintiff was "an extraordinarily experienced pro se litigant").

**A.      Law Governing Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(2)[4]**

When a defendant couples a 12(b) motion to dismiss for lack of personal jurisdiction with other issues, the court must first determine the jurisdictional issue. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090 (10th Cir.1998).

*1. Burden of Proof*

It is the plaintiff's burden to prove that a court has personal jurisdiction over a defendant who contests that jurisdiction. *See AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citing *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995)). However, this burden is "light" in the early stages of litigation. *AST Sports Sci., Inc.,* 514 F.3d at

---

[3]A sampling of Silver's federal pro se lawsuits, which have mostly failed on procedural grounds similar to those discussed here, includes *Silver v. United States*, Case No. 06-cv-00266 WJ/ACT (filed April 4, 2006); *Silver v. Ottolenghi, et al.*, Case No. 06-cv-312 RB/KBM; *Silver v. Fertig, et al.*, Case No. 06-cv-00612 ACT/LFG (filed July 10, 2006)*; Silver v. Sachs*, Case No. 08-cv-00041 RHS/DJS (filed January 1, 2008); *Silver v. Arland III, et al.*, Case No. 09-cv-00509 LH/RLP (filed May 6, 2009); *Silver v. Brown*, 678 F. Supp. 2d 1187, 1196 (D. N.M. 2009) *aff'd in part, rev'd in part and remanded*, 382 F. App'x 723 (10th Cir. 2010); *Silver v. Glass, et al.*, Case No. 11-cv-00256 (filed March 24, 2011), *dismissal with prejudice aff'd, Silver v. Glass*, 459 F. App'x 691 (10th Cir. 2012).

[4]Because the Court will dismiss the case on the basis of lack of personal jurisdiction and improper venue, the Court will not review the law governing motions to dismiss under Federal Rules of Civil Procedure 12(b)(4) or 12(b)(5), or address Defendants' arguments regarding Silver's violations of these rules. However, based on the recitation of facts above, it is clear to the Court that at the very least, Silver did not properly serve Defendants with process related to this suit. Silver admits as much, though, as noted, he attempts to brush off his failure as merely a "clerical error." *See* Motion to Dismiss Response at 1, 3.

1056 (citing *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). When a motion to dismiss for lack of personal jurisdiction is decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995)."The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.* at 1091. The Court will also "accept as true any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). Once the plaintiff makes this prima facie case, the defendant must then compellingly demonstrate "that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 at 477 (1985)).

*2. Law on Exercising Personal Jurisdiction Over Foreign Defendants*

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). New Mexico's long-arm statute authorizes jurisdiction to the full extent of the federal constitution. *See* N.M.S.A. 1978, § 38-1-16 (1971*)*; *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citing *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, 132 N.M. 312, 316-17, 48 P.3d 50, 54-55, and noting that New Mexico's long-arm statute's reach is coextensive with the federal Due Process Clause); *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994) ("Because we have interpreted the long-arm statute as extending our personal jurisdiction as far as constitutionally permissible, it is not necessary to determine whether [defendants] transacted

business within New Mexico in any technical sense.") (internal citations omitted). Consequently, the Court "need not conduct a statutory analysis apart from the due process analysis." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1159.

The due process analysis for personal jurisdiction questions has two parts. *See ClearOne Comm's, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1159). Federal due process limits are based on the concept of minimum contacts between the defendant and the forum state; this Court can only exercise jurisdiction over an out-of-state defendant if the defendant has such minimum contacts with New Mexico. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). The minimum contacts standard may be established by showing either general or specific jurisdiction.

> [A] court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (emphasis in original) (internal quotes and citations omitted). The defendant's minimum contacts with the forum must, in turn, be enough so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

**B.      Law Governing Motions to Dismiss Under Rule 12(b)(3)**

In a diversity action, venue lies in

> (1) a judicial district where any defendant resides, . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a)(1)-(3). In this case, because none of the Defendants resides in New Mexico, only § 1391(a)(2) is at issue. "Under [§ 1391(a)(2)], venue is not limited to the district with the *most* substantial events or omissions." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1165 (citing *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 264 (6th Cir. 1998); *Setco Enters. Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir. 1994)) (emphasis in original). Rather, venue may be proper in multiple venues; a venue is proper "'as long as a substantial part of the underlying events took place in those districts.'" *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166 (quoting *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 356 (2d Cir. 2005)) (internal quotation marks omitted).

Analysis of whether venue is proper takes place in two steps. "First, we examine the nature of the plaintiff's claims and the acts or omissions underlying those claims. . . . Second, we determine whether substantial events material to those claims occurred in the forum district." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166. The Circuits are split on the issue of whether the materiality analysis should focus on the defendant's actions alone, or also take into account the plaintiff's actions; the Tenth Circuit has not ruled definitively on the issue. *See id.* at 1166 n. 11. In determining whether venue is proper, courts take a complaint's well-pleaded allegations as true, and draw reasonable inferences in the plaintiff's favor. However, the plaintiff's allegations may be contradicted: courts can "consider[] evidence outside the complaint such as a defendant's affidavits." *See Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1260-61 (10th Cir. 2012) (quoting *Pierce v. Shorty Small's of Branson Inc.,* 137 F.3d 1190, 1192 (10th Cir. 1998)). "[A] plaintiff may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but only to the extent that such facts are uncontroverted by defendant's evidence." *Hancock*, 701 F.3d 1248 (internal quotation marks and citation omitted).

C.    **Silver Lacks Standing to Bring His Fraud and Racketeering Claims and Silver Has Not Sued the Real Party in Interest**

Before analyzing whether personal jurisdiction over Defendants or venue is proper, the Court will dispose *sua sponte* of three counts in Silver's Amended Complaint. Though Silver styles the claims as "Wire Fraud and Mail Fraud," "Civil Racketeering," and "Securities Fraud," the claims are essentially for breach of contract. More importantly, the claims are based on alleged violations of contracts between Silver's company, SFCG, and Defendants' company, iboats. Silver may not bring a claim on behalf of his company while acting pro se, and he may not sue Defendants individually for actions they allegedly took while acting in their capacities as representatives of their company.

Silver claims to be "the contractual recipient . . . of five (5%) percent of all the securities purchased by the angel investors that [Silver] introduced to iboats." Amended Complaint at 3. However, the "Investment Banking Agreement" that sets forth that term makes it clear that it is not Silver who is entitled to the five percent share, but rather his company, SFCG; Silver signed the Investment Banking Agreement on behalf of SFCG. *See* Exhibit 2 to First Peterson Aff. (Doc. No. 14-2). Silver appears to believe that all dealings between SFCG and iboats were in fact between Silver and the individual Defendants, because Silver was SFCG's contact working with Defendants at iboats. In fact, however, the 5% stake in the angel investors' shares belongs to SFCG, and only SFCG has the right to sue to enforce the terms of the stake or the shares.

Both local rule (D. N.M. LR-Civ. 83-7) and longstanding case law hold that in general, "a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se." *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001); *see also Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) (explaining that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). Additionally, in general "one who is not a party to a contract lacks standing to sue for its breach, absent a special

11

status such as that of a third-party beneficiary, corporate successor, or assignee of a contracting party." *Bevill Co. v. Sprint/United Mgmt.*, 77 Fed. App'x. 461, 462 (10th Cir. 2003). Silver has not alleged that he has any special status with regard to the contract between SFCG and iboats. He may therefore not bring an individual claim based on the contract (as Counts One, Four, and Five are), nor, because he is not a lawyer, may he bring a claim on SFCG's behalf. Silver's other claims, for disparagement and negligent infliction of emotional distress ("NIED"), are personal to Silver, so the Court will not dismiss those counts on this basis. However, the remaining counts are not properly before this Court, as Silver lacks standing to bring them.[5]

Even if Silver had hired counsel for this action, the Court would dismiss these counts because they do not include a real party in interest: iboats (though presumably if Silver had engaged counsel, such a mistake would not have been made). Just as Silver mistakenly believes that, as SFCG's CEO, he may sue on SFCG's behalf, he appears to believe that because Vassel and Peterson are CEO and CFO of iboats, he may sue them individually for alleged breaches of contract by iboats. But as Defendants' exhibits make clear, SFCG's contract obligating it to seek angel investment for iboats was between SFCG and *iboats*, not with Defendants; similarly, the angel investors obtained their shares in iboats through a contract with iboats, not with Defendants, even though one or more of Defendants signed on iboats' behalf. Because Silver has not sued iboats, the real party in interest, in the claims of wire fraud/mail fraud, civil

_____

[5]Courts in this District have advised Silver at least three times prior to the present case that he may not bring claims on behalf of SFCG. *See* MEMORANDUM OPINION AND ORDER, *Silver v. Ottolenghi, et al.*, Case No. 06-cv-312 RB/KBM; ORDER REQUIRING ENTRY OF APPEARANCE BY AN ATTORNEY LICENSED TO PRACTICE LAW IN THE UNITED STATES DISTRICT COURT, *Silver v. Fertig et al.*, Case No. 06-cv-612 ACT/LFG; *Silver v. Brown*, 678 F. Supp. 2d 1187, 1214 (D.N.M. 2009) *aff'd in part, rev'd in part and remanded*, 382 F. App'x 723 (10th Cir. 2010). If Silver persists in bringing lawsuits that he is not entitled to pursue pro se, he risks the District imposing sanctions against him that will prevent him from bringing any further claims at all.

racketeering, and securities fraud, the Court will dismiss these counts without prejudice.

**D.      Application of Rule 12(b)(2) Standard to Silver's Disparagement and Negligent Infliction of Emotional Distress Claims**

*1. The Parties' Arguments and Evidentiary Proffers Regarding Personal Jurisdiction*

Defendants argue that because each of the three Defendants is a resident of Utah, in order for the Court to exercise "personal jurisdiction over the Defendants, the Defendants must be subject to the jurisdiction of a court of general jurisdiction of the State of New Mexico." MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b) FOR LACK OF JURISDICTION, IMPROPER VENUE, IMPROPER SERVICE OF PROCESS, OR INSUFFICIENT SERVICE OF PROCESS (Doc. No. 12) ("Memorandum in Support") at 7. Defendants point to New Mexico's long-arm statute and the three-pronged test under which courts evaluate whether a party is subject to personal jurisdiction in New Mexico. *See id.* at 7-8 (quoting N.M.S.A. 1978, § 38-1-16, and citing *Tercero*, 132 N.M. 312, 316). Defendants argue that only N.M.S.A. 1978, § 38-1-16(A)(1), covering "transaction of any business within this state," and N.M.S.A. 1978, § 38-1-16(A)(3), covering "commission of a tortious act within this state," could possibly apply to the actions by Defendants alleged in Silver's Amended Complaint. Memorandum in Support at 8.

Defendants contend that they "have not transacted any business within the State of New Mexico" or committed any torts in the state, and that all of the business transactions at issue "transpired in the States of Utah, Colorado, Indiana and New York." *Id.* (citing First Peterson Aff. and First Bullock Aff.). Defendants further contend that the Court lacks specific jurisdiction over Defendants because "the Defendants have purposefully **not** directed their communications towards Plaintiff or the District of New Mexico as not a single preferred shareholder . . . has informed Defendants to deal with or contact Plaintiff." *Id.* (emphasis in original). Rather, "[i]n

13

all cases, Defendant Bullock and Defendant Peterson have communicated directly with the preferred shareholder or their legal counsel." *Id.* at 8-9. Finally, Defendants argue that they "have [had no] dealings of any basis with any party in the State of New Mexico" that satisfy the "continuous and systematic" contacts requirement to establish general jurisdiction. *Id.* at 9 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 & n. 9 (1984)).

In support of Defendants' Amended Motion to Dismiss, Defendants filed three affidavits, each with exhibits, that are relevant to the issue of personal jurisdiction.[6] In the AFFIDAVIT OF BRUNO VASSEL III IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT (Doc. No. 13) ("Vassel Aff."), Vassel indicates that while he spoke with Silver on one occasion in March 2012, Vassel otherwise has not communicated with him for two years. *See* Vassel Aff. at 3. Attached to the Vassel Aff. are Silver's original Complaint and what appears to be the original agreement between Silver's company and iboats, signed by Vassel on behalf of iboats on October 16, 2000 and by Silver on behalf of SFCG. *See* Investment Banking Agreement, Defendants' Exhibit B to Vassel Aff. (Doc. No. 13) ("IB Agreement"). In Bullock's affidavit, he explains the process by which iboats communicated with the angel investors (all of whom live in states other than New Mexico), observes that none of the angel investors had indicated to iboats that iboats should communicate with Silver on the investors' behalf, explains subsequent communications between Bullock and some of the angel investors (including the communication that Silver alleges was disparaging of Silver), affirms that he has "not spoken directly with David Silver nor [has he] sent written correspondence by mail, electronic communication, or otherwise to Mr. Silver," and notes that neither he nor his law firm has "practiced law in the State of New Mexico, nor

---

[6]Defendants also filed the Second Bullock Aff. and Second Peterson Aff., but these pertain only to Defendants' arguments that Silver failed to properly serve Defendants with process—arguments that the Court will not address.

conducted any other business in the State of New Mexico." First Bullock Aff. at 2-6.

Silver technically only responds to Defendants' arguments regarding lack of personal jurisdiction by contending that "Defendants' Motion to Dismiss for Lack of Jurisdiction does not state that it is over the person or over the matter, and is thus an incomplete motion, and should be dismissed for lack of clarity." Motion to Dismiss Response at 5. However, Silver also makes arguments in response to Defendants' points regarding venue that the Court could interpret as being arguments regarding jurisdiction. *See id.* at 3. This is because Silver's "venue" argument relies entirely on a previous case in which he was a plaintiff and in which the Tenth Circuit held that personal jurisdiction over the defendant was proper because Silver had adequately alleged that the defendant's disparagement harmed Silver in New Mexico. *See id.* (quoting *Silver v. Brown*, 382 F. App'x 723, 732 (10th Cir. 2010) (not published)). Silver argues that Defendants in this case "profound[ly] disparage[d] [Silver] . . . because Defendants wrote, emailed and telephoned the six angel investors who are Plaintiff's customers, and bypassed Plaintiff, thus severely damaging the reputation of Plaintiff among six of his angels . . . in the market in which he has made his living for the past forty years, and continues to do so." Motion to Dismiss Response at 3. In particular, Silver says, Bullock told one investor that "[Silver doesn't] know what [he is] talking about" with regard to Silver's complaints to Defendants that they were violating the agreements with the angel investors. *Id.* at 4. "That is disparagement writ large," Silver contends, because Silver has had such a long and successful career "and [Silver's] repudiation [sic] as a strong fiduciary among his angels is of vital importance to him." *Id.*

To his Motion to Dismiss Response, Silver attaches a Purchase Agreement, apparently from October 2001, that sets forth the terms under which the angel investors invested in iboats (Doc. No. 14-1); emails between Vassel and Silver from October 2001 regarding the drafting of the Purchase Agreement (Doc. No. 14-2); a print-out from a website showing the text of Utah

Uniform Securities Act § 61-1-22 (Doc. No. 14-3); an "Executive Summary" of iboats' business, prepared by Santa Fe Capital Group and apparently mailed to an individual at Amazon.com (Doc. No. 14-4); three short emails between the individual at Amazon.com and Silver (Doc. No. 14-5); photocopied portions of Silver's book, "Who's Who In Venture Capital" (Doc. No. 14-6); and a copy of an opinion by United States Magistrate Judge Robert H. Scott in a previous case brought by Silver (Doc. No. 14-7). Of these materials, only the nearly twelve-year-old emails from Vassel to Silver show any contact between Defendants and New Mexico.

Defendants reply that, contrary to Silver's assertion that the portion of the Amended Motion to Dismiss based on lack of personal jurisdiction lacks clarity, "Defendants clearly stated . . . that the Defendants move the Court 'to dismiss the action because . . . [t]he Defendants are not subject to the personal jurisdiction of the United States District Court for the District of New Mexico." REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b) AND MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT (Doc. No. 16) ("Motion to Dismiss Reply") at 9. Also, Defendants note, "Silver has not stated that the complained acts of disparagement are sufficient to establish 'the commission of a tortious act within this state' under N.M.S.A. 1978, § 38-1-16(A)(3), by following the [Tenth Circuit's analysis] in *Silver v. Brown* regarding personal jurisdiction." *Id.* at 10. Defendants point out that *Silver v. Brown* is factually distinguishable from the present case because the acts alleged in the earlier case were "significantly more substantial in relation to the District of New Mexico than are any alleged here." *Id.* Defendants argue that in *Silver v. Brown*, "the conduct complained of occurred over the internet specifically and intentionally targeting David Silver for the purpose of causing damage," whereas in this case "the acts which Plaintiff claims constitute disparagement giving rise to causes of action and possibly venue and jurisdiction . . . are not disparaging at all." *Id.* Defendants assert that Silver

"attempts to raise to the level of disparagement a comment [by Bullock] that Mr. Silver was incorrect in his calculation." *Id.* In Defendants' view, the other allegations supporting the concept of disparagement and personal jurisdiction based on that claim all "require[] an inference and assumption that the [alleged acts] would reflect negatively on Mr. Silver." *Id.*

*2. This Court Does Not Have Personal Jurisdiction Over Defendants*

     *a. Specific Jurisdiction*

The specific jurisdiction analysis has two steps. Courts first "consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Benton*, 375 F.3d at 1075-76 (internal citations omitted). The first step is the "minimum contacts" analysis, in which, among other things, a court is to examine whether a defendant purposefully initiated his activity in the state. *See Doe v. Roman Catholic Diocese of Boise, Inc.*, 1996-NMCA-057, 121 N.M. 738, 743, 918 P.2d 17, 22. The purposeful activity requirement ensures that defendants are not subject to personal jurisdiction solely by way of random or attenuated contacts with a forum. *See id.*

The only contacts with New Mexico by Defendants that Silver alleges in the Amended Complaint are (1) Vassel visited Santa Fe sometime in the early 2000s to ask Silver for help with angel investment funding; and (2) Peterson's email to Silver (along with some of the angel investors) after Silver filed the original Complaint. *See* Amended Complaint at 2, 6. Silver also alleges generally that Defendants "attempt[ed] to ruin the character, reputation and business of Plaintiff throughout the city of Santa Fe, the State and Plaintiff's marketplace," and bases this allegation on communications from Defendants to the angel investors, who reside in other states. *Id.* at 7-8. With the exception of one comment by Bullock to one of the angel investors, none of

the communications by Defendants to the angel investors had anything directly to do with Silver. *See id.* at 4-8. Defendants also acknowledge, via their affidavits, that Vassel and Peterson spoke with Silver on a conference call in March, 2012, when "Silver wanted to speak with [Peterson] concerning the conversion of the" angel investors' preferred stock in iboats. First Peterson Aff. at 7-8; Vassel Aff. at 3. Finally, Silver's exhibits show that Vassel communicated by email with Silver in 2001 about the iboats-SFCG contract under which Silver, on behalf of SFCG, was to obtain angel investment funding for iboats.

    None of these contacts comes close to being the kind of "minimum contacts" required by the Due Process Clause for the Court to exercise specific personal jurisdiction over Defendants, even for Silver's claim of disparagement. "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *Benton*, 375 F.3d at 1076 (internal citations and alterations omitted). The Court will address the contacts alleged for each Defendant in turn.

        *i. Bruno Vassel, III*

    Silver alleges only that Vassel visited Silver in New Mexico in the early 2000s; the parties' attachments to their briefing papers also show that Vassel later exchanged email messages with Silver and ultimately signed the investment contract between iboats and SFCG. Since SFCG's offices are in New Mexico, Vassel presumably understood that the subject of the contract (Silver's outreach to angel investors on behalf of SFCG) would occur in New Mexico. "A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum. However, 'with respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions

18

in the other State for the consequences of their activities.' In a contract case, relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Benton*, 375 F.3d at 1077 (10th Cir. 2004) (quoting *Burger King*, 471 U.S. at 473, 479)).

This is not a contract case; as noted above, the relevant contract was between SFCG and iboats, not between Vassel and Silver, and the Court is not considering Silver's contract-related claims. Even if the contract were between Vassel and Silver, however, Vassel's contacts with New Mexico still would not suffice to vest personal jurisdiction over Vassel in this Court for the purpose of Silver's disparagement and NIED claims. Potentially, the fact that Vassel signed a contract in New Mexico on behalf of iboats that created a multi-year relationship between Vassel's company and Silver's company can be seen as minimum contacts; however, the contacts fail the second part of the test, which evaluates whether the exercise of personal jurisdiction would violate notions of fair play. Because Vassel's contacts with New Mexico occurred so long ago; were undertaken on behalf of his company; and have nothing to do with Silver's disparagement and NIED claims, the Court believes that exercising personal jurisdiction over Vassel on these claims would not comport with those traditional notions of fair play and due process. Vassel's single recent telephone conversation with Silver also does not suffice to give rise to personal jurisdiction over Vassel in New Mexico. It was a single call that was apparently initiated by Silver, and Vassel participated in the call only briefly. Moreover, Silver does not even allege that any disparagement or emotional distress arose from this call in which Vassel was briefly involved.

ii. *Gordon Peterson*

Silver's Amended Complaint alleges no contacts by Peterson with New Mexico. As noted, however, Peterson and Vassel participated in a call with Silver in March 2012. But again,

19

this call is not the basis for any of Silver's disparagement or NIED claims; and even if it were, it would not be adequate to vest personal jurisdiction over Peterson in this Court. "In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards [for personal jurisdiction]. However, the exercise of jurisdiction depends on the nature of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (citing *Burger King*, 471 U.S. at 475 n. 18) (emphasis added); *see also DeVenzeio v. Rucker, Clarkson & McCashin*, 121 N.M. 807, 809-10, 918 P.2d 723, 725-26 (1996) ("Ordinarily, the use of mail and telephone services to contact a New Mexico resident from out of state is insufficient to satisfy the 'purposeful availment' prong of a minimum-contacts analysis."). In this case, it appears that Silver initiated the call with Peterson. In any case, the call was evidently not very substantive, and Silver does not cite it as any source of disparagement, so the Court cannot view it as a basis for personal jurisdiction over Peterson.

### iii. Clinton Bullock

Finally, while Silver alleges no direct contact by Bullock with New Mexico, he alleges that Bullock disparaged Silver in a conversation with one of the angel investors, and that since the disparagement affected Silver in New Mexico, this Court may properly exercise personal jurisdiction over Bullock. As noted, Silver cites the Tenth Circuit's ruling in an earlier case that Silver brought as a basis for this argument. *See* Motion to Dismiss Response at 3 (quoting *Silver v. Brown*, 382 F. App'x 723, 732 (10th Cir. 2010) (not published)). However, Silver's reliance on the earlier case's holding is unavailing. There, the defendant Brown had made serious efforts to harm Silver's reputation via a website that the defendant Brown could reasonably have been expected to know would be accessible in New Mexico. *See Silver v. Brown*, 382 F. App'x at 730. The distinction between the *Silver v. Brown* case and this case could hardly be more stark.

20

Bullock's single offhanded comment in a phone call to a single person in New York is simply not comparable to the allegations that Brown lodged against Silver (e.g., "David Silver is a thief") on a widely accessible website, which were the facts in the *Silver v. Brown* case. Even if Bullock had aimed to harm Silver more than he evidently did in making his comment (which merely indicated that Bullock did not think that Silver was correct in his calculations of what iboats owed the angel investors), the fact remains that the Tenth Circuit's holding in *Silver v. Brown* was predicated on the reality that blogs are widely available, and Brown's blog could easily have been viewed in New Mexico and harmed Silver's reputation in New Mexico. Only if the Court made many implausible theoretical leaps and assumptions, which it will not, could the Court possibly credit Silver's idea that Bullock's comment in a phone call to an investor in New York might harm Silver in New Mexico. Neither the Tenth Circuit's holding in *Silver v. Brown* nor any other theory of personal jurisdiction fits the facts of the present situation to grant the Court personal jurisdiction over Bullock.

### iv. Defendants Collectively

Silver generally alleges that Defendants made "offers to pay simple interest and return of principle" to the angel investors, and that these "subversive offers . . . abrogate the guts of the agreements used by Defendants to lure [the investors] into funding iboats," thus disparaging and causing emotional distress to Silver. Amended Complaint at 7-8. However, the offers to which Silver refers were made by iboats, not by Defendants, even though Defendants signed the offers and subsequent materials. *See* Defendants' Exhibits C through R to First Peterson Aff. (Docs. No. 17-3 through 17-19). As discussed above, iboats is not a party here. And even if Defendants were individually responsible for the offers, the Court agrees with Defendants that for the Court to find those contents aimed to cause any disparagement or infliction of emotional distress would "require[] an inference and assumption that [the offers] would reflect negatively on Mr. Silver."

21

Motion to Dismiss Reply at 10.  In particular, the letters make no reference to Silver. At least as important, Silver does not allege that the letters' contents were publicly available or known to any individuals in New Mexico, or that the contents were known to others in the general angel investment community. Unlike the allegations posted on the blog in *Silver v. Brown*, the letters at issue here show no intent by Defendants (or iboats) to harm Silver or his reputation.

Reading the Amended Complaint's allegations in the light most favorable to Silver and drawing reasonable inferences in Silver's favor, the Court concludes that Silver has not adequately alleged that Defendants made any attempt to harm or disparage Silver's reputation in New Mexico, or that Defendants should have realized that iboats' offers to the angel investors in other states would affect Silver in New Mexico in the way that the Tenth Circuit found adequate to establish personal jurisdiction in the *Silver v. Brown* case. Because Silver alleges no activities by Defendants adequate to establish minimum contacts with New Mexico, and because the letters to the angel investors in other states cannot reasonably be seen to intend to disparage or have anything to do with Silver or to be a source of emotional distress, it is clear that Defendants did not have sufficient contacts with New Mexico for the Court to contemplate exercising specific personal jurisdiction over them.

b. *General Jurisdiction*

Although the Court has determined that it cannot exercise specific jurisdiction over Defendants, it remains necessary to assess whether any source of general personal jurisdiction over the Defendants may exist. General jurisdiction is another way of meeting the minimum contacts requirement. "Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. However, because general jurisdiction is not related to the events giving rise to the

suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Helicopteros Nacionales de Colombia,* 466 U.S. at 415 (1984) and *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996)) (internal quotation marks and alterations omitted) (emphasis in original).

It should be clear from the Court's discussion above that none of the Defendants had the kind of "general business contacts" with New Mexico that would give rise to general personal jurisdiction. The only basis for such a claim would be the contract between SFCG and iboats under which Silver was to obtain angel investors to invest in iboats. However, as discussed, this contract was between the two companies, neither of which is a party to this case; Vassel signed the contract on behalf of iboats, and having done so does not subject him individually to general personal jurisdiction in the state of New Mexico. Silver alleges no other "continuous or systematic" business or other relationship or contacts by Defendants with New Mexico, and Defendants' affidavits confirm that there is none; therefore, the Court cannot exercise general personal jurisdiction over Defendants. Because no basis for exercising personal jurisdiction over Defendants on Silver's remaining two claims exists, the claims will be dismissed.

**E.     Application of Rule 12(b)(3) Standard to this Case**

Though the Court believes it is clear that it does not have personal jurisdiction over Silver's remaining claims, for the sake of thoroughness the Court will explain why those claims would have to be dismissed on the basis of improper venue, even if the Court had concluded otherwise on the issue of whether it can exercise personal jurisdiction over Defendants.

*1. The Parties' Arguments Regarding Venue in the District of New Mexico*

Defendants argue that the District of New Mexico is not the proper venue for Silver's claims because "all of the Defendants reside in the State of Utah, [so under] 28 U.S.C. 1391(b),

the . . . District of Utah is the proper venue for any action of Plaintiff against the Defendants."
Motion to Dismiss Response at 6. Defendants note that while the Amended Complaint says "that
a substantial part of the events complained of by the Plaintiff occurred in the District of New
Mexico," none of the communications at issue (those between Defendants and the angel
investors) went to New Mexico, but rather "were sent to the States of Colorado, Indiana, and
New York from Utah." *Id.* (citing First Peterson Aff. and First Bullock Aff.). Furthermore,
"Defendants did not initiate with or direct communication with Plaintiff concerning the
conversion of the preferred shares." *Id.* (citing First Peterson Aff., First Bullock Aff., and Vassel
Aff.)). As a result, Defendants conclude, their "contact . . . , if any, with the District of New
Mexico has not been substantial and the District of New Mexico is an improper venue." *Id.*

        As noted above, Silver's response to Defendants' claims about improper venue does not
really address the venue issue, but, instead, relies on a Tenth Circuit case involving personal
jurisdiction. *See* Motion to Dismiss Response at 3 (quoting *Silver v. Brown*, 382 F. App'x at
732). Silver believes that the Tenth Circuit's holding in the *Brown* case establishes that venue is
also proper in this case because Silver has again brought disparagement claims against someone
from outside New Mexico. *See id.* Defendants reply by noting that in order "[t]o rely on the
*Silver v. Brown* case [to establish venue], Silver must show [both] that the requirements of §
1391(b)(1) or § 1391(b)(2) have not been met" and that the facts Silver alleges about
disparagement are sufficient to subject Defendants to personal jurisdiction in New Mexico.
Motion to Dismiss Reply at 7-8. Defendants say that Silver "cannot meet this burden as he does
not, and cannot refute that under 28 U.S.C. § 1391 a proper venue for this action is found in
subparagraph (b)(1)," providing for venue in a district where all Defendants reside, if there is
one; here, there is such a venue in Utah, where all Defendants reside. *Id.* at 8 (citing First
Bullock Aff., Vassel Aff. and Peterson Aff.). As for subsection (b)(2) of the venue statute,

Defendants assert that "it is clear from the facts presented in the Affidavits in support of Defendants' Motion and this Reply, that the communications upon which Plaintiff Silver relies did not occur in New Mexico, but rather Utah, Colorado, Indiana and New York." *Id.* (citing First Bullock Aff. and First Peterson Aff.). Defendants conclude that, because one of the first two subsections of the venue statute (subsection (b)(1)) is applicable, Silver cannot avail himself of the venue statute's catch-all third subsection, because it only applies if one of the first two subsections is unavailable. *See id.* at 9.

*2. The District of New Mexico Is Not the Proper Venue For Silver's Claims*

The Court agrees with Defendants that, even if the Court had personal jurisdiction over Silver's claims, venue in this District would not be proper and the Court would dismiss Silver's claims on that basis alone. The only possible ground for venue in the District of New Mexico is under 28 U.S.C. § 1391(b)(2). Under the first step of the venue analysis, the Court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166. Here, the claims are of disparagement and NIED based on the letters sent by iboats to angel investors whom Silver had signed up to invest in iboats. In the next step of the venue analysis, the Court "determine[s] whether substantial events material to those claims occurred in the forum district." *Id.* Clearly, as established in the discussion above, precisely *no* events material to the disparagement claim or the emotional distress claim occurred in New Mexico. Only if the Court could find that Silver plausibly alleged that he, his reputation, his character, and his business (all located in New Mexico) were disparaged or emotionally harmed by the letters sent by iboats to the angel investors, could the Court find that any events material to Silver's claims occurred in the District of New Mexico. However, as the Court has already explained, letters that are sent to other states and that have no mention of or anything to do with Silver—particularly letters that relate to business matters between parties that are not

present in this litigation—cannot cause the kind of disparagement or emotional distress impact in New Mexico necessary to satisfy the requirements of 28 U.S.C. § 1391(b)(2). This is true regardless of whether Silver felt hurt by what he thought was the implications of the letters, because the letters were not directed to or made public in New Mexico. Therefore, venue is not proper under 28 U.S.C. § 1391(b)(2). And because an alternate basis of venue exists under 28 U.S.C. 1391(b)(1), Silver would not be able to avail himself of the venue statute's third subsection, which provides for venue in a district where any defendant is subject to the personal jurisdiction of the Court, even if the Court had determined that it could exercise personal jurisdiction over one of the Defendants. Therefore, although the Court has already disposed of Silver's remaining claims on the basis of lack of personal jurisdiction, the Court notes that it would also dismiss Silver's remaining claims on the alternate basis of improper venue. The Court further observes that, should Silver wish to pursue his disparagement or NIED claims, he may file them in the District of Utah, where venue would be proper.

**F.     Silver's Motion for Default Judgment**

As part of his Motion to Dismiss Response filed October 16, 2012, Silver moved this Court to enter default judgment against Defendants on the ground that defendants have failed to file an answer to his Amended Complaint. *See* Motion to Dismiss Response at 4. Silver's motion appears to be grounded in his belief that Defendants' Amended Motion to Dismiss, which was based entirely on Rule 12(b), "is actually a Rule 41 pleading, and not a Rule 12(b) motion as they assert." *Id.* at 5. With that being the case, Silver argues that Defendants were required to file a timely answer, but they have not done so. *See id.* Silver bases this notion on a ruling by United States Magistrate Judge Robert H. Scott in an unrelated but similar case brought by Silver against a former business partner. *See id.* at 4 (quoting MEMORANDUM OPINION AND ORDER, 08-cv-00041 RHS/DJS, filed June 16, 2008 ("*Silver v. Sachs* Opinion"). Silver

complains that Defendants have "violate[d] Fed. R. Civ. P. 7 which requires an answer to a complaint" because "Defendants have not answered Plaintiff's complaint within the 20 days provided, and are thus in default." *Id.* at 5.

Defendants respond by asserting that Silver's Motion for Default Judgment relies entirely on a mischaracterization of Defendants' Amended Motion to Dismiss and on a "revers[al of the analysis in a previous case] to serve [Silver's] purpose in this case and support a Motion for Default Judgment. Motion to Dismiss Reply at 11-12. Defendants note that the *Silver v. Sachs* Opinion "addresses whether or not a motion clearly filed pursuant to Fed. R. Civ. P. 8 and 41(b) and filed more than twenty[7] days after service of the summons and complaint" should be granted and Silver's complaint in the same case dismissed. *Id.* (citing *Silver v. Sachs* Opinion). Defendants further note that Judge Scott rightly acknowledged that a defendant may file "a motion permitted by Rule 12(b) or (e) . . . within the twenty-day period after service of a complaint," instead of filing an answer. *Id.* Defendants assert that, unlike the defendant in *Silver v. Sachs*, they "did not in either the [Amended Motion to Dismiss] or Memorandum in Support, allege any violation of Fed. R. Civ. P. 8, nor ask for a dismissal pursuant to Rule 41." Motion to Dismiss Reply at 12. Defendants also contend that they "have not violated the requirements of Rule 7 in failing to respond within the time allotted for service of a responsive pleading after" Silver first attempted to serve his original Complaint or Amended Complaint. *Id.* According to Defendants, even if Silver's first attempt at service of the original Complaint "was sufficiently made service under Fed. R. Civ. P. 4(e) and was sufficient process under Fed. R. Civ. P. 4(c) . . . , and that such service was complete upon receipt on September 11, 2012 . . . , Defendants had 21 days [from that date] until the Tuesday, October 2, 2012 pursuant to Fed. R. Civ. P. 6 and 12,

---

[7]Rule 12(a)(1) was amended in 2009, after the *Silver v. Sachs* Opinion was issued; the relevant deadline is now twenty-one days.

to file an answer or responsive pleading." *Id.* Because Defendants filed and served their First

Motion to Dismiss on October 1, 2012,[8] Defendants believe they "complied with the Rule

12(a)(1) 21 day time requirement of a responsive pleading, as well as with the Rule 12(b)

requirement that "[a] motion asserting any of these [defenses] must be made before pleading if a

responsive pleading is allowed." *Id.* at 12-13.

The Court agrees with Defendants' analysis. As related above, Silver did not serve

Defendants with summonses until October 10, 2012, and even then service was almost certainly

improper because no registered agent of Defendants signed for the FedExed packages containing

the Amended Complaint and summons. However, as Defendants point out, even if Silver's

earlier attempts at service, in which he did not serve Defendants with summonses, had been

proper, Defendants' First Motion to Dismiss, filed on October 1, 2012, would still have fallen

within the twenty-one-day deadline. Under Federal Rule of Civil Procedure12(b), defendants

who assert a defense of lack of personal jurisdiction or improper venue have the option to assert

the defenses by motion first rather than in a responsive pleading. And under Federal Rule of

Civil Procedure 12(a)(4)(A), because Defendants timely filed their First Motion to Dismiss, an

answer would not be due until ten days after Defendants received notice that their motion to

dismiss is denied or that the Court is postponing its ruling on their motion until a trial on the

merits. Fed. R. Civ. P. 12(a)(4)(A). However, because the Court will grant Defendants'

Amended Motion to Dismiss, no further responsive pleadings on Defendants' behalf are

required. Silver's motion for default judgment will therefore be denied. *See Dickerson v. Leavitt*

*Rentals*, 995 F.Supp. 1242, 1250 (D. Kan.), *aff'd*, 153 F.3d 726 (10th Cir. 1998), *cert. denied*,

---

[8]The Court notes that while the date listed in the electronic docket is October 3, 2012, the filing and certificate of service are both signed and dated October 1, 2012. The date of the filed document itself and of its service are controlling.

119 S.Ct. 882 (1999) (denying plaintiff's motion for default judgment because defendants timely

filed 12(b)(6) motion, and, therefore, no responsive pleading was required).

**G.      Silver's Other Motions**

On December 11, 2012, Silver filed a MOTION TO COMPEL DEFENDANTS TO

TALK TO AMAZON ABOUT AN ACQUISITION OF IBOATS AND SHARE THE VALUE

AND HOW ARRIVED AT OFFERED WITH AMAZON WITH PLAINTIFF (Doc. No. 22)

("Motion to Compel"), asking the Court to compel Defendants to enter business negotiations

with Amazon.com. On January 29, 2013, Silver filed his Motion for Order to Add Clarity, in

which he asks the Court to "realize that it is no longer difficult or obtuse to arrive at a valuation

of a privately-held tech company, and all investment banks . . . will see that the valuation of

Defendants' company is significantly more than 2.2x the angels' 2001 and 2002 investments."

Motion for Order to Add Clarity at 2. Finally, on February 26, 2013, Silver filed his Motion for

Court to Send Parties to Shareholder Forum, in which he asks the Court to order the parties to

discuss a stock valuation issue with a non-party business, and to order that the parties abide by

that business' determination of the stock's value.

Defendants have taken the time to respond to Silver's additional motions. Mostly,

Defendants point out that the motions are "unreasonable and frivolous," to the extent that it is

even possible to determine what legal relief Silver is seeking by filing the motions. *See, e.g.*,

Motion to Add Clarity Response at 1-2. The Court agrees with Defendants that Silver's motions

are not legally cognizable, in that they request the Court to involve itself in business matters in

which the Court has no authority to intervene; additionally, the motions have wasted the time of

both Court staff and of Defendants' counsel. Furthermore, the Court has already determined that

it does not have personal jurisdiction over Defendants. Therefore, the Court will deny the

Motion to Compel, Motion to Add Clarity, and Motion for Court to Send Parties to Shareholder

Forum, and will order sanctions on Silver as described below.

**H.      Defendants' Motion for Attorney's Fees and Costs**

Defendants ask, as part of both the Motion to Add Clarity Response and the Shareholder Forum Response, that the Court "utilize its inherent authority" to award Defendants attorney's fees and costs "in an amount equal to the excess costs and attorney's fees" that Defendants have incurred by having to respond to Silver's Motion for Order to Add Clarity and Motion for Court to Send Parties to Shareholder Forum. Shareholder Forum Response at 3; Motion to Add Clarity Response at 3. Defendants also indicate their intent to seek, but do not yet move for, "the imposition of Fed. R. Civ. P. 11 sanctions against" Silver based on his signing and filing the Motion for Order to Add Clarity. *Id.* at 2-3. Silver responds by focusing on Rule 11, though as noted, Defendants have not yet moved for Rule 11 sanctions. *See* PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO HAVE THE COURT SEND THE CASE TO SHAREHOLDERS FORUM TO RESOLVE THE DISPUTE (Doc. No. 37) ("Shareholder Forum Reply"). Silver "avers that he is obeying the precepts of Fed. R. Civ. P. 11(b)(3)" in his filings because, according to various new allegations and irrelevant claims regarding business transactions and valuations that Silver includes in his pleading, Silver can "certify[] to the best of [his] knowledge" that the claims in the Motion for Order to Add Clarity "have evidentiary support." Shareholder Forum Reply at 2.

As noted, the Court agrees with Defendants that Silver's Motion for Order  to Add Clarity and Motion for Court to Send Parties to Shareholder Forum are frivolous. Silver asserts no new "claims" in the Motion for Order to Add Clarity, but rather narrates an irrelevant series of calculations that Silver believes demonstrate iboats' share value. Moreover, though Silver may not be a lawyer, he is obviously experienced enough in litigation in the federal courts to know the kinds of relief that federal courts are empowered to provide, and to realize that his

30

motions have no merit and have merely wasted Defendants' (and the Court's) time and money. Silver has been advised previously to obtain counsel to assist him with his business lawsuits so that he is able to properly pursue any meritorious claims he may have. Silver has apparently refused to do so, preferring to take responsibility for his lawsuits in his own hands and yet then ignoring the careful explanations in the rulings handed down denying his claims. The Court has the inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). That power includes "the ability to fashion an appropriate sanction" in response to abusive litigation practices. *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1419 (10th Cir. 1997). Mindful of this inherent power, in light of Silver's clear disregard for and frivolous use of the court system, the Court does not hesitate to sanction Silver for these frivolous motions in the same way it would sanction an attorney who filed such utterly baseless motions. Defendants will therefore be allowed to file a motion seeking reimbursement from Silver for the reasonable costs and attorney's fees incurred in association with Defendants' responses so to the Motion for Order to Add Clarity and the Motion for Court to Send Parties to Shareholder Forum.

IT IS ORDERED THAT:

(1)     Defendants' MOTION TO DISMISS UNDER RULE 12(b) FOR LACK OF JURISDICTION, IMPROPER VENUE, IMPROPER SERVICE OF PROCESS, OR INSUFFICIENT SERVICE OF PROCESS (Doc. No. 8) IS DENIED AS MOOT.

(2)     Defendants' MOTION FOR LEAVE TO APPEAR (Doc. No. 9) IS DENIED AS MOOT.

(3)     Defendants' AMENDED MOTION TO DISMISS (Doc. No. 15) IS GRANTED.

31

(4)     Plaintiff's MOTION TO COMPEL DEFENDANTS TO TALK TO AMAZON

ABOUT AN ACQUISITION OF IBOATS AND SHARE THE VALUE AND

HOW ARRIVED AT OFFERED BY AMAZON WITH PLAINTIFF (Doc. No.

22) IS DENIED.

(5)     Plaintiff's MOTION TO ADD CLARITY TO THE PROCESS OF VALUING

TECH COMPANIES (Doc. No. 32) IS DENIED.

(6)     Plaintiff's MOTION FOR THE COURT TO SEND THE PARTIES TO

SHAREHOLDER FORUM (Doc. No. 35) IS DENIED.

(7)     Defendants, by May 10, 2013, may file a motion with supporting affidavits

seeking reimbursement of the reasonable attorney fees and costs associated with

responding to Plaintiff's Motion to Add Clarity and Motion to Send Parties to

Shareholder Forum.


_____

SENIOR UNITED STATES DISTRICT JUDGE