IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID SILVER,

    Plaintiff,

vs.                                                                                                       No. 1:12-cv-00948-JAP/RHS

**BRUNO VASSEL, III, GORDON PETERSON,** and **CLINTON H. BULLOCK,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

On April 26, 2013, the Court entered a MEMORANDUM OPINION AND ORDER dismissing Plaintiff David Silver's ("Silver") claims. *See* Doc. No. 38 ("Memorandum Order and Order"). The Memorandum Opinion and Order also permitted Defendants Bruno Vassel, III, Gordon Peterson, and Clinton H. Bullock to file a motion seeking reimbursement of attorney's fees and costs that they expended in responding to two frivolous motions filed by Plaintiff. *See id.* at 30-31. On May 10, 2013, Defendants filed a MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS. *See* Doc. No. 38 ("Motion for Attorney's Fees). Defendants also filed a supplemental AFFIDAVIT OF ATTORNEY'S FEES AND COSTS, which includes an exhibit itemizing Defendants' expenditures on legal fees for responding to Plaintiff's frivolous motions. *See* Doc. No. 40 ("Attorney's Fees Affidavit"); IBOATS, INC. LEGAL BILLING DETAILS (Doc. No. 40-1) ("Billing Exhibit"). Defendants request reimbursement of $6,232.50 for their attorneys' work on the two motions (no court costs were incurred). *See* Motion for Attorney's Fees at 3 (citing Attorney's Fees Affidavit). On June 11, 2013, Silver filed a REPLY TO DEFENDANTS' MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND

1

COSTS (Doc. No. 48) ("Response"). The Response challenges the Court's determination that the motions were frivolous and the Court's failure to send the parties to a settlement conference. Having considered the parties' briefs and the relevant law, the Court concludes that Defendants' Motion for Attorney's Fees should be granted in part.

## BACKGROUND[1]

Sometime in the early 2000s, Silver, who is the Founder/CEO of Santa Fe Capital Group ("SFCG"), began working with Defendants Bruno Vassel, III, and Gordon Peterson, who are the CEO and CFO, respectively, of website iboats, inc., to help them get financing to grow iboats. *See* AMENDED COMPLAINT (Doc. No. 5) ("Amended Complaint") at ¶ 8. Silver identified a group of six "angels" who collectively invested about $200,000 in iboats via 7% Cumulative Convertible Preferred Stock ("Preferred Stock") and a 12% Convertible Promissory Note with Detachable Warrants ("Convertible Note"). *See id.* ¶¶ 11, 17. SFCG was to be "the contractual recipient . . . of five (5%) percent of all the securities purchased by the angel investors that he introduced to iboats, and whatever [the angel investors] are due and entitled to" in case of the securities' liquidation. *Id.* ¶ 16. However, Silver says that in the years following this investment, iboats failed to honor many of the terms governing either the Preferred Stock or the Convertible Note, and has not, for example, issued regular annual reports. *See id.* ¶¶ 23-29. Defendants are now offering either to buy the angels out or convert their stock on terms that Silver believes does not adequately compensate the angels. *Id.* ¶ 30.

On September 10, 2012, Silver, acting pro se, filed his original COMPLAINT with this

---

[1]The Court outlined the facts of the underlying case in detail in its Memorandum Opinion and Order of April 26, 2013. This Background section provides only the facts relevant to the Motion for Attorney's Fees.

Court. *See* Doc. No. 1. Silver filed his Amended Complaint on October 2, 2012. *See* Doc. No. 5. On October 3, 2012, Defendants filed a MOTION TO DISMISS UNDER RULE 12(b) FOR LACK OF JURISDICTION, IMPROPER VENUE, IMPROPER SERVICE OF PROCESS, OR INSUFFICIENT SERVICE OF PROCESS (Doc. No. 8); later, on October 23, 2012, Defendants filed an AMENDED MOTION TO DISMISS (Doc. No. 15) ("Amended Motion to Dismiss").

After completion of briefing on the Amended Motion to Dismiss, Silver filed additional motions with this Court. First, on January 29, 2013, Silver filed a MOTION TO ADD CLARITY TO THE PROCESS OF VALUING TECH COMPANIES (Doc. No. 32) ("Motion to Add Clarity"). Second, on February 26, 2013, Silver filed a MOTION FOR THE COURT TO SEND THE PARTIES TO SHAREHOLDER FORUM (Doc. No. 35) ("Motion for Court to Send Parties to Shareholder Forum"). Defendants responded to each of these motions. *See* DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO ADD CLARITY TO THE PROCESS OF VALUING TECH COMPANIES, NOTICE OF INTENT TO SEEK RULE 11 SANCTIONS, AND REQUEST FOR AWARD OF ATTORNEY'S FEES AND COSTS (Doc. No. 33) ("Motion to Add Clarity Response"); DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR THE COURT TO SEND THE PARTIES TO SHAREHOLDER FORUM, NOTICE OF INTENT TO SEEK RULE 11 SANCTIONS, AND REQUEST FOR AWARD OF ATTORNEY'S FEES AND COSTS (Doc. No. 36) ("Shareholder Forum Response"). Silver replied only to the Shareholder Forum Response. *See* PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO HAVE THE COURT SEND THE CASE TO SHAREHOLDERS FORUM TO RESOLVE THE DISPUTE (Doc. No. 37) ("Shareholder Forum Reply"). In both of their responses, Defendants indicated that they would seek Rule 11 sanctions against Silver for filing "frivolous" motions, and asked the Court to

award attorney's fees to Defendants to compensate them for the time spent in responding to the Motion to Add Clarity and Motion for Court to Send Parties to Shareholder Forum. *See* Motion to Add Clarity Response at 3; Shareholder Forum Response at 3.

This Court dismissed Silver's Amended Complaint on April 26, 2013.[2] *See* Memorandum Order and Opinion. In addition, the Court denied Silver's Motion to Add Clarity, the Motion for Court to Send Parties to Shareholder Forum, and a third filing by Silver, his MOTION TO COMPEL DEFENDANTS TO TALK TO AMAZON ABOUT AN ACQUISITION OF IBOATS AND SHARE THE VALUE AND HOW ARRIVED AT OFFERED BY AMAZON WITH PLAINTIFF (Doc. No. 22) ("Motion to Compel Talks with Amazon"). The Court explained that these three motions were frivolous in that they were "not legally cognizable, . . . they request[ed] the Court to involve itself in business matters in which the Court has no authority to intervene[, . . . and] the motions have wasted the time of both Court staff and of Defendants' counsel." Memorandum Order and Opinion at 29. Also, relying on its "inherent power 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases,'" the Court indicated that Defendants would be permitted to file a motion seeking attorney's fees for the time spent on responding to the Motion to Add Clarity and the Motion for Court to Send Parties to Shareholder Forum. *Id.* at 31 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). As noted, Defendants subsequently filed their Motion for Attorney's Fees with supporting materials.

**DISCUSSION**

**A.     The Parties' Arguments**

In the Motion for Attorney's Fees, Defendants reiterated their argument that "[a]n award

---

[2]Silver has appealed the Court's rulings. *See* NOTICE OF APPEAL (Doc. No. 41).

of fees and costs is reasonable . . . inasmuch as [Silver] has filed motions which unreasonably multiplied proceedings, were frivolous, required additional time and expense at the cost of Defendants, and negatively impacted the efficiency of the Court." Motion for Attorney's Fees at 2-3. Defendants noted that 28 U.S.C. § 1927 grants courts the authority to sanction litigants "who so multipl[y] proceedings in any case unreasonably and vexatiously," as well as that courts in the Tenth Circuit have confirmed "the ongoing authority of the courts distinct from any statutory authorization, to 'deter frivolous and abusive litigation.'" *Id.* at 3 (quoting *Doe ex rel. Hughes v. Martinez*, 674 F.Supp.2d 1281, 1285 (D. N.M. 2009)). Defendants requested a total of $6,232.50 in attorney's fees for the work required to respond to Silver's Motion to Add Clarity and Motion for Court to Send Parties to Shareholder Forum.

In response, Silver principally argues that over the course of his professional career, he has done a great many important, meritorious things, such as providing college scholarships to students in a sixth grade class, raising funds that enabled scientists to create a strep-throat detecting device, contributing to and guaranteeing a construction loan for a new building for Temple Beth Shalom in Santa Fe, and funding meetings of the Venture Capital Club of New Mexico, thereby bringing many jobs to New Mexico. *See* Attorney's Fees Response at 1-2. Silver notes that the dictionary meaning of "frivolous" is "[c]haracterized by lack of seriousness or sense," and argues that his many accomplishments demonstrate that "he would be described in his professional and philanthropic life as serious," rather than frivolous. *Id.* at 1. As support for these claims, Silver attached his own AFFIDAVIT OF DAVID SILVER, in which he further details his many accomplishments. Silver also provides several newspaper articles by him or about his philanthropic and investment activities, and photocopies of the covers of some of the books he has authored. *See id.* at 5-15. Finally, Silver says "that he believes the Court should

have called for a settlement meeting with the Court monitoring it as did [Magistrate] Judge Svet," who had settled a previous case brought by Silver "in two hours." *Id.* at 2-3.

Defendants reply that Silver's Attorney's Fees Response "fails to refute the position of the Defendants or to meaningfully speak to the requirements for an award of attorney's fees or the amount of fees requested by Defendants." DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS (Doc. No. 49) ("Attorney's Fees Reply") at 1. Defendants note that Silver's Attorney's Fees Response basically relies on the idea that "because of various projects undertaken [by Silver] and community and personal goals met by him that [Silver] is a 'serious' person and therefore his filings in this action must be considered to [be] 'serious' or not frivolous." *Id.* Defendants argue that the response is merely "further irrelevant argument . . . requir[ing] a response necessitating additional unreasonable expenditure of time and resources incurring additional fees and costs." *Id.* at 2.

**B.      Silver's Motions Were Frivolous and the Sanctions Were Merited**

The Court previously found that Silver's Motion to Add Clarity and the Motion for Court to Send Parties to Shareholder Forum were frivolous. The Court reiterates and expands that finding here. The Court begins by noting that the word "frivolous" is a legal term of art; though it does not always have a consistent meaning, the most "uncontroversial" meaning refers to suits or motions with "little or no chance of the defendant's objective liability on the basis of any of the legal theories plaintiff alleges." *See* Robert G. Bone, *Modeling Frivolous Suits*, 145 U. Pa. L. Rev. 519, 530-33 (1997) (describing three definitions of "frivolous" lawsuits). Even if the term "frivolous" is not always used consistently, one way in which it is *not* used in court is to refer to the character of the party filing the "frivolous" motion or suit. The Court's reference to Silver's

motions as "frivolous" did not, therefore, in any way mean to pass judgment on Silver as a person. As noted, Silver has pointed out in his Attorney's Fees Response that he has accomplished many great things and contributed much to society. *See* Attorney's Fees Response at 1-2. The Court compliments Silver for his many good deeds.

Although the Court does not disagree that Silver has achieved much in his life, the fact remains that he filed frivolous motions in this case. The Motion to Add Clarity and the Motion for Court to Send Parties to Shareholder Forum were frivolous in the sense that they lacked any cognizable legal basis and, as a result, wasted both Defendants' time and the Court's time and resources, which could have been far better spent in addressing meritorious matters. The Motion to Add Clarity simply lists a series of calculations that Silver has made regarding the probable value of iboats, as well as describing a similar valuation effort with another company. Motion to Add Clarity at 1. The Motion to Add Clarity "prays the Court will realize that it is no longer difficult or obtuse to arrive at a valuation of a privately-held tech company" such as iboats. *Id.* at 2. The Court does not pass judgment on whether this claim is true, but it is clear, and should have been clear to Silver, that this is not a request for a legal remedy that the Court can provide.

Similarly, the Motion for Court to Send Parties to Shareholder Forum "prays the Court will order the parties to hire Shareholders Forum," a private firm that Silver explains was "set up in 1999 to resolve differences of opinion" such as those between Silver and Defendants regarding the value of the angel investors' stock in iboats. Motion for Court to Send Parties to Shareholder Forum at 1-2. This is not a request for legal relief, but for intervention in business matters, as Silver makes clear with his continued references to the possibility of a sale of iboats to Amazon.com. *See id.* at 1; Shareholder Forum Reply at 2. Furthermore, as this Court and others in this District have explained to Silver, even if the Court could get involved in such business

matters, Silver does not have legal standing to represent SFCG, nor has he sued iboats, but rather its corporate representatives. *See* Memorandum Order and Opinion at 12. In sum, Silver's Motion to Add Clarity and the Motion to Send Parties to Shareholder Forum are frivolous in their failure to request any cognizable legal relief and in their insistence on attempting to involve the Court in business matters that Silver does not even have standing to pursue in the courts. Given Silver's past experience and knowledge of both the business and legal aspects of this issue, he should have recognized that the Motion to Add Clarity and the Motion to Send Parties to Shareholder Forum had no legal basis and should not have been filed.

The Court acknowledges that its inherent powers must be exercised with restraint and discretion because they "are shielded from direct democratic controls." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). The Court does not, therefore, broadly or liberally apply this power. *See Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1357-58 n. 7 (10th Cir. 1985). Based on the discussion above, however, and considering Silver's relatively extensive experience with the federal courts through previous litigation he has pursued,[3] the Court maintains its previous conclusion that limited sanctions in this case are appropriate because of the utter lack of merit of the Motion to Add Clarity and the Motion to Send Parties to Shareholder Forum , and because the Court believes Silver is, or should by now be, aware of the scope of relief possible in court.

Regarding Silver's complaint that the Court did not construe his Motion to Send Parties to Shareholder Forum as a request that the Court send the parties to settlement talks, the Court first notes that amicable settlement of disputes is obviously preferable to litigation. The Court would have been delighted for the parties to work with a magistrate judge to try to settle the

---

[3]*See* Memorandum Order and Opinion at 12 (noting previous cases litigated by Silver).

case. But the Motion to Send Parties to Shareholder Forum did not indicate in any way that Silver was asking the Court to refer the parties to a magistrate judge for discussion of settlement. Silver recounts his successful experience working with Magistrate Judge Svet, who quickly settled a previous case brought by Silver. *See* Attorney's Fees Response at 2. The Court is glad that Silver had such a positive experience in a prior case he filed in this District. As a result of his prior case, Silver was reasonably aware of the settlement process in this District, and that he could have requested the assistance of a magistrate judge to help the parties with settlement efforts. Silver did not do this. Instead, in his Motion to Send Parties to Shareholder Forum, Silver asks the Court to "order the parties to hire Shareholders Forum, and pay their equal portions of the cost of such hire, and . . . that Defendants must pay [Silver] and his angel investors that price per share [calculated by Shareholders Forum] and that Silver and his angels must accept that price in a buyout . . . ." Motion to Send Parties to Shareholder Forum at 2. The Court cannot be expected to have understood from this rambling, somewhat obtuse language that Silver was asking the Court to help him engage in the settlement process provided for in this District. In the future, if Silver pursues litigation in this District and wishes to settle with his adversaries, he must clearly request the help of a magistrate judge and not expect the Court to read his mind and initiate settlement talks for him.

      C.      **Defendants' Requested Attorney's Fees**

Defendants request a total of $6,232.50 for their work on the Motion to Add Clarity Response and the Shareholder Forum Response. *See* Motion for Attorney's Fees at 3. In support of the Motion for Attorney's Fees, Defendants filed the Attorney's Fees Affidavit, sworn by attorney Karen Bullock Kreeck, as well as the Billing Exhibit, which itemizes the claimed expenses. After careful review of the Billing Exhibit, the Court concludes that it cannot award

Defendants all of the claimed fees. First, several of the itemized expenses do not clearly relate to the motions for which the Court indicated Defendants could request attorney's fees. In particular, the first claimed expense, from January 25, 2013, predates both the Motion to Add Clarity and the Motion for Court to Send Parties to Shareholder Forum. Three charges on February 19, 2013, relate to the Motion to Compel Talks with Amazon and to Silver's letters to Defendants regarding a possible Rule 26 conference. *See* Billing Exhibit at 1, 3. Defendants' attorneys charged a total of $231 in connection with this work. Since the Court's Memorandum Opinion and Order only permitted Defendants to move for attorney's fees related to the Motion to Add Clarity and the Motion for Court to Send Parties to Shareholder Forum, the Court will not award fees for this other work, which is not clearly related to those motions.

Additionally, Defendants request a total of $3,082.75 for their work on the Motion for Attorney's Fees and supporting materials. *See* Billing Exhibit at 5-6. The two frivolous motions by Silver for which the Court permitted Defendants to file the Motion for Attorney's Fees did lead to Defendants' attorneys' work on the Motion for Attorney's Fees and the related costs. However, the Court believes it should not, in this case, award attorney's fees for the work on the Motion for Attorney's Fees. Therefore, the Court will also deny this portion of Defendants' Motion for Attorney's Fees. As a result, subtracting from the original request of $6,232.50, the $231 of requested fees on unrelated motions, and $3,082.75 of requested fees incurred for work on the Motion for Attorney's Fees, the Court comes to a new total of $2,918.75. The Court believes this amount will reasonably and fairly compensate Defendants for the attorney's fees they incurred in responding to Silver's frivolous Motion to Add Clarity and Motion for Court to Send Parties to Shareholder Forum.

**IT IS ORDERED THAT** DEFENDANTS' MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS (Doc. No. 39) IS GRANTED IN PART. No later than July 12, 2013, Plaintiff David Silver must reimburse Defendants for $2,918.75 of attorney's fees incurred in responding to Silver's frivolous motions.

_____
SENIOR UNITED STATES DISTRICT JUDGE